Opinion filed April 14,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00353-CV

                                                    __________

 

                        PAINT
ROCK OPERATING, LLC, Appellant

 

                                                   
              V.

 

CHISHOLM EXPLORATION, INC.
AND CHISHOLM PRODUCTION, INC., Appellees



 

                                   On
Appeal from the 32nd District Court

 

                                                            Nolan
County, Texas

 

                                                     Trial
Court Cause No. 18,954

 



 

O
P I N I O N

This
is an accounting dispute.  Paint Rock Operating, LLC filed suit against
Chisholm Exploration, Inc. and Chisholm Production, Inc. to collect costs it
incurred as operator of four leases.[1] 
The trial court conducted a bench trial and awarded Paint Rock $3,927.40, but
denied the majority of its requested relief.  Paint Rock has appealed,
contending that it is entitled to a larger recovery and to its attorney’s fees. 
We affirm.




 

I.  Background Facts

In
1998, Chisholm, as operator, and Buckingham Oil Interests, Inc., as
non-operator, executed a Joint Operating Agreement (JOA) covering a tract of
land commonly referred to by the parties as the Texaco Fee Lease.[2] 
Chisholm also operated the Brooks, Brooks Ranch, and Morrow Leases.  There was,
however, no JOA for these properties.  Operations on all four leases were
transferred from Chisholm to Paint Rock in December 2005.  Paint Rock sent
bills, or JIBs (Joint Interest Billings), to Chisholm.  Paint Rock sent the
December 2005 JIBs in June 2006.   The January through May JIBs were sent in
early July.  The June JIB was sent in mid-July.   Chisholm paid some, but not
all, of Paint Rock’s charges.  Chisholm returned marked-up copies of the JIBs,
showing the charges that it refused to pay, along with a check for the
undisputed charges.  Paint Rock filed suit to collect the unpaid balance of the
JIBs as well as its attorney’s fees.

II.  Issues

Paint Rock challenges the judgment with four issues.  First,
it challenges specific findings of fact.  Second, it contends that the trial
court erred by denying it any recovery on its quantum meruit claim.  Finally, Paint
Rock argues in Issues Three and Four that the trial court erred by denying it
recovery of its attorney’s fees.

III. 
Texaco Fee Lease

In
Issue One, Paint Rock challenges several of the trial court’s findings of fact
regarding the Texaco Fee Lease, primarily for sufficiency of the evidence. 
This was the only lease covered by a JOA, and Paint Rock’s challenges are
specific to this agreement.

A.  Standard of
Review. 

A
trial court’s findings of fact in a bench trial are reviewed for legal and
factual sufficiency under the same standards used to review a jury’s verdict on
jury questions.  Kennon v. McGraw, 281 S.W.3d 648, 650 (Tex.
App.—Eastland 2009, no pet.).  In considering a legal sufficiency challenge, we
review all the evidence in the light most favorable to the prevailing party and
indulge every inference in its favor.  City of Keller v. Wilson, 168
S.W.3d 802, 822 (Tex. 2005).  In reviewing a factual sufficiency challenge, we
consider all of the evidence and uphold the finding unless the evidence is too
weak to support it or the finding is so against the overwhelming weight of the
evidence as to be manifestly unjust.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986).  We review the trial court’s conclusions of law de novo. 
Smith v. Smith, 22 S.W.3d 140, 143-44 (Tex. App.—Houston [14th Dist.]
2000, no pet.).

B.  Did the
Trial Court Properly Find that Paint Rock Breached the JOA?

The
trial court found that Paint Rock breached the JOA by failing to timely bill
Chisholm for the months of December 2005 through May 2006.  Paint Rock alleges
that this was error because Chisholm did not file a pleading alleging breach of
contract.  There is no question that Paint Rock breached the JOA by mailing its
JIBs late.  The JOA includes a standard COPAS accounting procedure exhibit. 
Article I.2 provides:

Operator
shall bill Non-Operators on or before the last day of each month for their
proportionate share of the Joint Account for the preceding month.  Such bills
will be accompanied by statements which identify the authority for expenditure,
lease or facility, and all charges and credits summarized by appropriate
classifications of investment and expense except that items of Controllable
Material and unusual charges and credits shall be separately identified and
fully described in detail.

 

Darryl
Buckingham, Paint Rock’s owner, acknowledged that the JOA required him to
submit monthly bills and that those bills are due by the end of the succeeding
month.  Consequently, the bill for December 2005 should have been sent by
January 31, 2006.  He did not know exactly when that bill was submitted but
agreed that twelve of the fourteen bills he sent Chisholm were late.  Charles
Schroeder, III, Chisholm’s president and owner, testified that he received the
December 2005 JIB in June 2006 and that the January through May JIBs were
received in July.

It
is equally undisputed that Chisholm did not plead breach of contract either as
a counterclaim or affirmative defense.  Despite this, there is no question that
the issue was tried.  Buckingham was extensively cross-examined about the
timeliness of his JIBs, Paint Rock offered the opinion of its expert that the
JOA imposed no penalty for sending out late JIBs, and Schroeder testified about
the date he received each JIB.  There was no objection to the propriety of this
evidence.

To
determine whether an issue was tried by consent, we examine the record for
evidence of whether the parties actually tried the issue.  Johnston v.
McKinney Am., Inc., 9 S.W.3d 271, 281 (Tex. App.—Houston [14th Dist.] 1999,
pet. denied).  Trial by consent is not a general rule of practice and should
not be applied unless clearly warranted.  Haas v. Ashford Hollow Cmty.
Improvement Ass’n, Inc., 209 S.W.3d 875, 883-84 (Tex. App.—Houston [14th
Dist.] 2006, no pet.).  A party’s unpleaded issue may be deemed tried by
consent when evidence on the issue is developed under circumstances indicating
that both parties understood the issue was in the case, and the other party
failed to make an appropriate complaint.  Johnson v. Structured Asset
Servs., LLC, 148 S.W.3d 711, 719 (Tex. App.—Dallas 2004, no pet.).  Because
this issue was tried and because there was no objection to the testimony, the
issue was tried by consent and the trial court did not err by finding that
Paint Rock breached the JOA.  Issue 1(a) is overruled.

C. 
Written Exceptions to the JIBs.

Paint
Rock next complains of the trial court’s finding that Chisholm properly
excepted to the JIBs.  The JOA requires a non-operator to except, in writing,
to any challenged charge.  Specifically, Article I.4 provides:

Payment
of any such bills shall not prejudice the right of any Non-Operator to protest
or question the correctness thereof; provided, however, all bills and
statements rendered to Non-Operators by Operator during any calendar year shall
conclusively be presumed to be true and correct after twenty-four (24) months
following the end of any such calendar year, unless within the said twenty-four
(24) month period a Non-Operator takes written exception thereto and makes
claim on Operator for adjustment.

 

When Schroeder
received Paint Rock’s invoices, he reviewed them and saw several charges he
disagreed with.  Schroeder’s objections were to the increased overhead, the
addition of a production supervisor, and repair work for which there was no
prior AFE (Authorization for Expenditures).[3] 
He marked through or circled the disputed charges, marked down partially
disputed charges, and returned the JIBs and a check for the balance.  The
marked-up JIBs were introduced into evidence.  Schroeder did not provide any
written explanation of his criticisms of the disputed amounts because he
thought it was fairly obvious what his objections were.

When
Chisholm operated the leases, it charged overhead at the rate of $400 per month
per well.  The JOA allows for an annual adjustment to the overhead rate.  Apparently,
the rate had not been changed recently.  When Paint Rock took over operations,
Buckingham calculated what overhead would be if it had been adjusted annually,
and he started charging this revised rate.  Chisholm refused to pay the new
rate but paid $400.  Paint Rock also hired a production supervisor.  Schroeder
and Buckingham had discussed hiring a production supervisor while Chisholm was
operator.  Schroeder told Buckingham that he did not believe a supervisor was
necessary, so Schroeder marked out the supervisor charges.  Finally, Paint Rock
undertook several repair operations.  Buckingham acknowledged that the JOA
required an AFE for expenditures in excess of $10,000.  Even though Paint Rock
billed for work that cost more than $10,000, no AFE was sent.  Chisholm marked
these repair charges out.

The
purpose of the JOA’s written exception provision is to provide the operator
with notice.  The JOA, however, does not define what constitutes a sufficient
written exception.  Paint Rock knew what charges Chisholm objected to, but Buckingham
testified that he believed the JOA also required an explanation for Chisholm’s
objections.  Schroeder disagreed because he believed his objections were
obvious.  The trial court did not err by finding that Chisholm properly
excepted to the JIBs.  If the trial court found Schroeder’s testimony credible,
it could have reasonably concluded that Paint Rock received sufficient notice
because it knew what charges Chisholm objected to and why.[4] 
Issues 1(b) and 1(c) are overruled.

D. 
The Unpaid Portion of Paint Rock’s JIBs.

Paint
Rock next complains that the trial court erred by not awarding it the full
amount of its JIBs.  As noted above, the parties’ dispute centers on Paint
Rock’s decision to increase overhead, to hire a production supervisor, and to
engage in repair operations without submitting an AFE.  The JOA’s COPAS
accounting procedures allow for an annual adjustment as of the first day of
April each year by the percentage increase or decrease in the average weekly
earnings of Crude Petroleum and Gas Production Workers for the last calendar
year. Buckingham recalculated the overhead rate by determining what it would
have been if it had been adjusted every April 1st.  This was in error.  Paint
Rock was entitled to readjust the overhead rate as of April 1, 2006, but only
from the rate currently in effect.

The
trial court did not err by finding that Paint Rock violated the JOA by
undertaking repairs in excess of $10,000 without first submitting an AFE. 
Paint Rock offered testimony that an AFE was not required, but the JOA clearly
provides otherwise.  Finally, the trial court could reasonably find Schroeder’s
testimony, that a production supervisor was unnecessary, credible.  If so,
Chisholm was not required to pay those charges.

The
trial court did not err by finding that Paint Rock was not entitled to the full
amount of its JIBs.  Issue 1(d) is overruled.

IV. 
Other Leases

Paint
Rock contends in its second issue that the trial court erred by denying it any
relief for its quantum meruit claim.  Schroeder testified that, when Chisholm
operated the leases, he used the same methodology on all four leases, and his
criticisms of Paint Rock’s charges made no distinction between whether they
were incurred on the Texaco Fee Lease or on one of the other leases.  Because
we have found that the trial court did not err by denying Paint Rock recovery
on the disputed charges incurred on the Texaco Fee Lease, it follows that the
trial court did not err by denying recovery for the same disputed charges on
the other leases.  Issue Two is overruled.

V.  Attorney’s
Fees

Paint
Rock complains in Issues Three and Four that the trial court erred by denying
it any recovery for attorney’s fees.  When Paint Rock offered attorney’s fee
evidence, Chisholm objected, contending that Paint Rock’s response to its
request for disclosure failed to identify the amount or method of calculating
attorney’s fees.  The trial court took Chisholm’s objection under advisement
and allowed counsel to testify.  The trial court’s findings of fact included a
finding that Paint Rock failed to fully answer Chisholm’s discovery by not
disclosing the amount and method of calculating attorney’s fees.  Paint Rock
argues that it was not required to disclose any information concerning its
claim for attorney’s fees because Tex.
R. Civ. P. 194.2(d) requires disclosure of economic damages and
attorney’s fees are not economic damages.  We need not address this claim because
Chisholm acknowledges that an award of attorney’s fees for a breach of contract
or quantum meruit is discretionary.  Because the trial court denied Paint Rock
recovery for most of the unpaid items it claimed and because the trial court
found that Paint Rock breached the JOA by not timely submitting JIBs, it did
not abuse its discretion by denying Paint Rock’s claim for attorney’s fees. 
Issues Three and Four are overruled.




 

VI. 
Conclusion

The judgment of the trial court is affirmed.

            

 

RICK STRANGE

                                                                                    JUSTICE

 

April 14, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]The Chisholm entities will be referred to collectively
as Chisholm.





[2]The JOA is an A.A.P.L. Form 610-1982 Agreement.





[3]Article VII D.3 of the JOA provides:

 

      Other Operations: Without the consent of
all parties, Operator shall not undertake any single project reasonably
estimated to require an expenditure in excess of ten thousand and no/100
Dollars ($10,000.00) except in connection with a well, the drilling, reworking,
deepening, completing, recompleting, or plugging back of which has been
previously authorized by or pursuant to this agreement; provided, however,
that, in case of explosion, fire, flood or other sudden emergency, whether of
the same or different nature, Operator may take such steps and incur such
expenses as in its opinion are required to deal with the emergency to safeguard
life and property but Operator, as promptly as possible, shall report the
emergency to the other parties.  If Operator prepares an authority for
expenditure (AFE) for its own use, Operator shall furnish any Non-Operator so
requesting an information copy thereof for any single project costing in excess
of ten thousand and no/100 Dollars ($10,000.00) but less than the amount first
set forth above in this paragraph.





[4]We do not hold that marking out charges on a JIB and
returning it to the operator is sufficient, as a matter of law, to comply with
COPAS Article I.4.  Our holding is limited to a review of the sufficiency of
the evidence to support the trial court’s finding of fact in this case.