**Opinion filed March 5, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00278-CV

_____

## MARY LOUISE KENNON AND KENNON LIVING TRUST, Appellants

## V.

## WANDA J. McGRAW, Appellee

**On Appeal from the 142nd District Court**

**Midland County, Texas**

**Trial Court Cause No. CV 43,072**

## O P I N I O N

Wanda J. McGraw sued Mary Louise Kennon and Kennon Living Trust alleging that they wrongfully foreclosed her residence and that they charged her usurious interest. The trial court conducted a bench trial and found in McGraw's favor. We affirm in part and reverse and remand in part.

### I. *Background Facts*

In 1995, McGraw and her husband purchased a residence from the Trust. They signed a promissory note payable to the Trust for $32,000 and a deed of trust. The note bore interest of 9%

and was payable in 180 monthly installments due on the first day of the month beginning April 1, 1995. In 1995, the McGraws made all of their payments, but only one timely. The McGraws were divorced in 1996. From that point forward, Wanda McGraw's payments were always late and many were missed – although she did make an additional $1,015.76 payment in 1998.

Kennon's attorney sent a letter in February 1999 demanding payment of $1,322.47 to satisfy an escrow shortage and $1,622.80 for past-due note payments. McGraw consulted with an attorney. McGraw's attorney responded to the demand letter, denied that there was any default, and contended that the Trust was improperly calculating McGraw's escrow payment. In November 1999, the Trust sent a second demand letter. This letter demanded payment of $5,632.11 for past-due principal, interest, taxes, and insurance. McGraw's attorney again denied any default and contended that McGraw was being charged usurious interest.

The Trust foreclosed the note and, on March 10, 2000, provided McGraw with notice of a trustee's sale to take place on April 4. McGraw's attorney faxed a response on April 3. McGraw alleged that the Trust was charging usurious interest because it was improperly calculating the interest due on past-due payments. The Trust proceeded with the trustee's sale and, in June, attempted to evict McGraw. She filed suit in district court, and the eviction proceedings were abated. Following a bench trial, the trial court found that McGraw had been charged interest of $3,240.50 in excess of the amount allowed by law and awarded McGraw damages of $9,721.50, attorney's fees, and costs.

## II. *Issues*

Kennon and the Trust contend that the trial court erroneously failed to spread the interest over the entire term of the note, that the trial court erred by not giving effect to the note's savings clause, and that the evidence is legally and factually insufficient.

## III. *Analysis*

### A. *Standard of Review.*

A trial court's findings of fact in a bench trial are reviewed for legal and factual sufficiency under the same standards used to review a jury's verdict on jury questions. *Girdner v. Rose*, 213 S.W.3d 438, 445 (Tex. App.—Eastland 2006, no pet.). In considering a legal sufficiency challenge, we review all the evidence in the light most favorable to the prevailing party and indulge every

inference in their favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We review the trial court's conclusions of law de novo. *Smith v. Smith*, 22 S.W.3d 140, 143-44 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

### B. Spreading.

The trial court found that from March 1995 through December 1999 Kennon and the Trust charged McGraw interest of $17,845.29 and that this was usurious because the maximum amount of allowable interest was only $13,920. The December date may have been a typographical error because it appears that the court intended to use the time period running through the Trust's acceleration of the note, but the note was accelerated by letter dated March 10, 2000. Regardless, Kennon and the Trust argue that, because of the Spreading Doctrine, it was error to use any period of time shorter than the fifteen-year term of the note and that the trial court should have determined whether $17,845.29 could be legally charged over fifteen years. McGraw answers that the Spreading Doctrine only applies when analyzing a note to determine if it charges usurious interest and that it does not apply here because Kennon did not follow the note's terms when she charged past-due interest.

The Spreading Doctrine was first recognized in *Nevels v. Harris*, 102 S.W.2d 1046, 1049 (Tex. 1937). It has since been codified at TEX. FIN. CODE ANN. § 302.101 (Vernon 2006). This statute reads in part:

> (a) To determine whether a loan secured in any part by an interest in real property, including a lien, mortgage, or security interest, is usurious, the interest rate is computed by amortizing or spreading, using the actuarial method during the stated term of the loan, all interest at any time contracted for, charged, or received in connection with the loan.

Because of the statute's mandatory language and its broad reference to all interest contracted for, charged, or received, we disagree with McGraw that it only applies to the construction of a written agreement. The doctrine is applicable to this case as well.

3

The next question is what time period should be utilized. The trial court did not use the entire fifteen-year term because the note was accelerated; however, the supreme court has held that this is immaterial. In *Tanner Dev. Co. v. Ferguson*, 561 S.W.2d 777, 779 (Tex. 1977), the court considered a five-year note that required prepayment of interest at the beginning of the note and then provided for a subsequent period of principal-only payments. The debtor defaulted while still making prepaid interest payments, and the creditor accelerated the note. The court held that, even though the note was accelerated, usury should be determined by using the five-year term. *Id.* at 786.

Because the trial court did not utilize the entire term of the note when it performed its interest calculation, Kennon and the Trust's first and second issues are sustained. But for the reasons explained below, we do not endorse their proposed method for determining the interest rate charged.

*C. Savings Clause.*

Kennon and the Trust next argue that the trial court erred as a matter of law by not giving effect to the note's savings clause. They contend that, unless a note is usurious on its face, a savings clause precludes a usury claim. The note provided:

> It is further expressly agreed that interest on this note will not be charged in excess of the highest legal rate specified by the Laws of the State of Texas and that future adjustments will be made to avoid the payment of interest in excess of such limits.

The trial court found that, because the Trust accelerated the note and held a trustee's sale, McGraw's future payments could not be adjusted to compensate for overcharges and, thus, that the savings clause did not preclude a usury claim. The court also found that Kennon and the Trust's actions were not the result of any accident or bona fide error.

Savings clauses are favored by the law and will be given effect if reasonably possible. *Woodcrest Assocs., Ltd. v. Commonwealth Mortgage Corp.*, 775 S.W.2d 434, 437-38 (Tex. App.—Dallas 1989, writ den'd). The effect of a savings clause hinges on the construction of the terms of the whole transaction in light of the surrounding circumstances. *Id.* Usury is a matter of intention, and a savings clause is evidence of an intent not to charge usurious interest. *Robert Joseph Phillips Living Trust v. Scurry*, 988 S.W.2d 418, 421 (Tex. App.—Eastland 1999, pet. denied). A party may not, however, escape penalty by disclaiming the intention to do what was clearly done. *Nevels*, 102 S.W.2d at 1050.

4

Kennon and the Trust's issue raises a legal sufficiency challenge. This requires that we review all the evidence in the light most favorable to the prevailing party, indulging every inference in their favor. *City of Keller*, 168 S.W.3d at 822. Kennon's daily late interest charge was the amount of interest accruing each day on the total note. Kennon testified that she calculated late interest charges using an amortization schedule the title company provided at closing. That schedule included an equivalent daily interest rate. She multiplied this rate by the number of days a payment was late. This initially resulted in a $7.872 daily late payment charge. As the note balance decreased, she recalculated the daily interest rate. Kennon was, therefore, doubling the interest McGraw was charged each day her payment was late. One court has described this method as "patently erroneous." *See Pentico v. Mad-Wayler, Inc.*, 964 S.W.2d 708, 715 (Tex. App.—Corpus Christi 1998, pet. denied).

When the Trust accelerated the note, McGraw's counsel specifically brought this issue to Kennon's attention, writing:

> After reviewing Ms. Kennon's figures and the terms of the Deed of Trust and Vendor's Lien Note, it is clear Ms. Kennon is incorrectly computing the interest on past due payments. The clear language of the note entitles her only to claim interest on the **past due** principal and interest. Ms. Kennon is computing her past due interest on the entire unpaid balance.

Previously, McGraw's counsel had twice advised Kennon in writing that Kennon was incorrectly calculating McGraw's payment obligations and once warned her that she was charging usurious interest. Kennon did not alter her demand, proceeded with the trustee's sale, and testified at trial that she made no adjustments because she did not believe it was necessary.

When this evidence is viewed in the light most favorable to McGraw, it supports the trial court's lack of accident or bona fide error finding. Consequently, the trial court did not err as a matter of law by finding that the savings clause did not preclude McGraw's usury claim. Issue Three is overruled.

*D. Sufficiency of the Evidence.*

Kennon and the Trust next argue that the evidence is legally and factually insufficient to support the trial court's finding that they charged usurious interest. The trial court had the note and heard evidence of McGraw's payments, Kennon's past-due interest calculations, and the Trust's

demands. This is some evidence and, thus, legally sufficient to support the trial court's finding. However, it is factually insufficient because neither party offered evidence of the appropriate late charges or past-due interest.

Because McGraw's payments were late, the Trust was entitled to late charges and to interest on unpaid charges. *Pentico*, 964 S.W.2d at 717-18. TEX. FIN. CODE ANN. § 302.001(d) (Vernon 2006) allows the trust to charge the greater of five percent of the payment or $7.50 for any payment that is at least ten days late. McGraw's monthly payments were $324.56. The Trust, therefore, was entitled to a late charge of $16.23 for each payment received on or after the eleventh of the month due. The note also provides that "all past due principal and interest due under the terms of this note shall bear interest from maturity at the maximum allowable rate." TEX. FIN. CODE ANN. § 302.001(b) (Vernon 2006) sets the maximum rate of interest at 10% a year. The Trust could, therefore, charge 10% interest or 8.8921 cents per day on all late payments.

McGraw called Lawrence Prucka, a CPA, as her expert witness. Prucka agreed that the Trust was entitled to additional interest on past-due payments, but he did not make that calculation. Instead, he took the date of each payment and calculated the accrued interest as of that date. He deducted the accrued interest and applied the remainder to principal. Prucka accused Kennon of charging several hundred percent interest on late payments, but his calculations fail to consider either the legally allowable late charges or the interest accruing on past-due payments and, thus, understate McGraw's liability. Because McGraw provided some evidence of overcharging, Kennon and the Trust's legal sufficiency challenge (Issue Four) is overruled. But because McGraw did not provide the court with sufficient evidence to make the correct calculation, Kennon and the Trust's factual sufficiency challenge (Issue Five) is sustained. This requires that we remand for a partial new trial to determine if the Trust charged usurious interest and, if so, to award the appropriate relief. Because we are affirming the trial court's finding that the savings clause does not preclude a finding of usury, that issue is not included in the new trial.

When conducting the new trial, the court should spread the interest over the entire fifteen-year period of the note. The court should consider not only the interest actually charged but also the interest that would have been charged absent acceleration. *See Tanner*, 561 S.W.2d at 779 (considering the interest charged as of acceleration and the interest that would have been charged

6

over the remainder of the note); *Groseclose v. Rum*, 860 S.W.2d 554, 558 (Tex. App.—Dallas 1993, no pet.) (the Spreading Doctrine requires consideration of all interest charged to date along with interest to be charged pursuant to the terms of the note).[1]  When calculating the maximum permissible interest, the court should consider the late charge allowed by Section 302.001(d) and the 10% interest on late payments allowed by Section 302.001(b).  Finally, the Trust is entitled to 10% on past-due escrow payments.  Unlike many mortgages that require the payment of estimated taxes and insurance in advance, the note required McGraw to reimburse the Trust.[2]  Thus, McGraw's monthly escrow payments are one-twelfth of the previous year's insurance and tax costs.

## IV. *Holding*

The judgment of the trial court is affirmed in part and reversed in part.  That portion of the judgment finding that the savings clause does not preclude a usury claim is affirmed.  The remainder of the judgment is reversed, and this case is remanded for a new trial on all issues excluding the savings clause.

RICK STRANGE

JUSTICE

March 5, 2009

Panel consists of:  Wright, C.J.,
McCall, J., and, Strange, J.

---

[1]We do not hold that trial courts have no authority to depart from the express terms of the note when considering future interest. If, for example, the court found that the parties had altered their obligations through a course of conduct, the court would calculate interest using the revised agreement.  Here, there are no findings supporting a departure from the note's express provisions.

[2]The note reads:

> It is the responsibility of the Kennon Living Trust to prepay the premiums for insurance and to prepay the taxes annually and to advise the makers hereof of these amounts.  The total monthly payments due on this note shall be adjusted as necessary to include enough money to reimburse Kennon Living Trust for these funds on an annual basis.  Maker's failure to pay these escrowed funds for taxes and insurance shall constitute a default under the Deed of Trust securing this note and shall entitle beneficiary to any rights and/or remedies granted herein to satisfy default.