**Opinion filed May 10, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00194-CV

_____

## MARY FRANCES HAFERKAMP, Appellant

## V.

## LEONARD GRUNSTEIN AND MURRAY FORMAN, Appellees

**On Appeal from the 414th District Court**

**McLennan County, Texas**

**Trial Court Cause No. 2009-4054-5**

## M E M O R A N D U M   O P I N I O N

The trial court granted Leonard Grunstein's and Murray Forman's special appearance in Mary Frances Haferkamp's lawsuit against them. We affirm.

*Background Facts*

Appellant is a former employee of Mariner Healthcare Management Company. She filed suit against Mariner Healthcare Management Company; SSC Waco Greenview Operating Company, LP; SSC Pasadena Vista Operating Company, LP; SavaSeniorCare, LLC; and SavaSeniorCare Administrative Services, LLC (collectively "Business Defendants") in the 414th District Court of McLennan County. In her lawsuit, appellant pleaded negligence claims arising out of an alleged workplace injury in April 2005. After the Business Defendants filed a motion for summary judgment, appellant filed a third amended petition naming new out-of-state

individual defendants, Leonard Grunstein and Murray Forman, and added claims for conspiracy and alter ego theory.

Appellees have argued that they were not properly served with notice of appellant's third amended petition. Indeed, the returns on the citations do not reflect that service was had on either Grunstein or Forman. Nevertheless, appellant obtained a partial default judgment against them. According to appellees, no notice of the motion for default judgment or of the hearing on the motion was given to any of the parties. After the trial court sent a letter to the parties announcing its intention to grant summary judgment to the Business Defendants on appellant's negligence claims, appellant then filed a motion to sever the claims against appellees from those against the Business Defendants. According to appellees, no notice of this motion or of the hearing held on the motion was given to any of the parties.

The district clerk notified the Business Defendants that a severance order had been entered. They had not been made aware of that, and they requested a copy of the trial court's docket sheet in order to determine whether appellant's counsel had taken other actions without notice. The Business Defendants filed a motion for sanctions against appellant for failing to provide notice of the default judgment and the severance. Appellees were not parties to the motion for sanctions. The motion was filed on behalf of the Business Defendants only and was filed in the original cause, not the one into which the trial court severed the claims against appellees.

On January 29, 2010, appellees filed their special appearances in the cause into which the trial court had severed the claims against them. On April 22, 2010, the trial court granted appellees' special appearances and also granted summary judgment for the Business Defendants in the original cause on appellant's underlying negligence claims and dismissed that lawsuit. Appellant timely filed a request for findings of fact and conclusions of law, and the trial court entered them.

In this appeal, appellant maintains that the trial court erred when it granted appellees' special appearances. Appellant also argues that the trial court's findings of fact were not supported by factually sufficient evidence and that it erred when it denied appellant adequate time for discovery. For ease of reference, we have organized appellant's issues on appeal as follows:

> 1. Seeking affirmative relief aside from a special appearance constitutes a general appearance;

2. The default judgment admitted all facts except damages;

3. Appellees' no alter ego defense fails;

4. Jurisdiction is proper because of appellees' contact with Texas;

5. Findings of fact and conclusions of law are not supported and are improper; and

6. Trial court denied appellant adequate time for discovery.

*The Trial Court's Findings of Facts & Conclusions of Law*

At appellant's request, the trial court entered findings of fact and conclusions of law. In Issue No. 5, appellant concludes, without analysis, that Finding Nos. 2, 3, 4, and 6 are "so against the great weight and preponderance of the evidence as to be manifestly wrong."[1] We interpret appellant's argument to be that certain of the trial court's findings of fact are not supported by factually sufficient evidence. A trial court's findings of fact are reviewed for factual sufficiency under the same standards used to review a jury's verdict on jury questions. *Kennon v. McGraw*, 281 S.W.3d 648, 650 (Tex. App.—Eastland 2009, no pet.). In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Paint Rock Operating, LLC v. Chisholm Exploration, Inc.*, 339 S.W.3d 771, 774 (Tex. App.—Eastland 2011, no pet.) (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)).

Our review of the record reveals that each and every finding of fact by the trial court is supported by sufficient evidence and, furthermore, was not controverted by appellant. Specifically, Finding Nos. 2, 3, and 4 are each supported by the affidavits of Grunstein and Forman. Each of these findings is a verbatim restatement of the assertions set out in appellees' affidavits. Appellant's third amended petition does not contain any facts that contest the assertions in appellees' affidavits. Appellant did not present any evidence to negate the claims made in the affidavits, and neither did she assert that they were sham affidavits. The trial court's findings of fact are supported by sufficient evidence.

---

[1]The findings made by the trial court were identical for both Grunstein and Forman, so appellant did not address them separately. Since the affidavits of appellees are also identical except for the names of each party, we will also address them together.

Appellant also attacks Finding No. 6 for factual insufficiency. Finding No. 6 states: "To the extent that this Court's inquiry into its jurisdiction over [appellees] is anything other than a pure question of law, the Court specifically finds that it lacks specific, general, and alter ego jurisdiction over [appellees]." This is a conclusion of law. An appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002) (citing *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet. denied), and *Dallas Cnty. v. Sweitzer*, 881 S.W.2d 757, 763 (Tex. App.—Dallas 1994, writ denied)). Appellant's Issue No. 5 is overruled as it pertains to the trial court's findings of fact.

Appellant also attacks the trial court's Conclusion of Law Nos. 5 and 6. These conclusions concern the central issue of this appeal: whether the trial court erred in granting the special appearances. We are not bound by the trial court's conclusions of law and will review them independently to determine their legal correctness by analysis below. *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996); *Landerman v. State Bar of Tex.*, 247 S.W.3d 426, 431 (Tex. App.—Dallas 2008, pet. denied).

*The Trial Court's Order Granting Appellees' Special Appearances*

Appellant makes several arguments to support her position that the trial court erred when it granted the special appearances. Appellant's Issue Nos. 1, 2, 3, and 4 each attack the trial court's decision to grant the special appearances. In Issue No. 1, she argues that appellees sought affirmative relief and thereby consented to the court's exercise of personal jurisdiction over them. In Issue Nos. 2 and 3, she argues that the default judgment against appellees admitted all facts within her third amended petition, including allegations of alter ego jurisdiction. In Issue No. 3, appellant asserts that appellees made voluntary contacts with the Texas Secretary of State and the Texas Department of Aging and Disability Services and that these contacts support a finding of both specific and general personal jurisdiction of the Texas courts.

In addition to subject-matter jurisdiction, the court must have personal jurisdiction over a party before it can issue a binding judgment. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). "[P]ersonal jurisdiction concerns the court's power to bind a particular person or party." *Id.* The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008); *BMC Software*, 83 S.W.3d at 793. When the plaintiff meets

4

this burden, the burden shifts to the nonresident defendant to negate all possible grounds for personal jurisdiction. *BMC Software*, 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). The existence of personal jurisdiction is a question of law that must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In considering an order granting or denying a special appearance, we may review a trial court's findings on disputed factual issues for both legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 794. However, when the underlying facts are undisputed or otherwise established, we conduct a de novo review of the trial court's order as a question of law. *Id.*; *El Puerto De Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.); *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied); *Preussag Aktiengesellschaft*, 16 S.W.3d at 113. In any event, in conducting its review, an appellate court considers all of the evidence in the record. *El Puerto*, 82 S.W.3d at 628. Here, we have the clerk's record, the reporter's record of the hearing, and extensive findings of fact provided by the trial court. We review the trial court's decision de novo as a question of law.

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd.*, 925 S.W.2d at 594. The Texas long-arm statute gives Texas courts the power to exercise personal jurisdiction over a nonresident defendant who does business in Texas. Section 17.042. The statute provides a list of activities that constitute doing business in Texas; however, the list is not exhaustive. The broad language of the statute reaches "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of

our laws. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "touchstone" of due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three parts to a "purposeful availment" inquiry: (1) only the defendant's contacts with the forum are relevant; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must have sought some benefit, advantage, or profit by availing itself of jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Jurisdiction is premised on notions of implied consent that, by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. *Michiana*, 168 S.W.3d at 785. The quality and nature of the defendant's contacts with the forum state, rather than their number, are important in analyzing minimum contacts. *Guardian Royal*, 815 S.W.2d at 230 n.11.

A defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795–96; *Guardian Royal*, 815 S.W.2d at 227–28. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to the activities conducted within the forum. *CSR Ltd.*, 925 S.W.2d at 595. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum-contacts analysis than for specific jurisdiction. *Id.*

Specific jurisdiction is present when the cause of action arises from or is related to the defendant's contacts with the forum state. *Id.*; *Guardian Royal*, 815 S.W.2d at 227. When specific jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum state. *Moki Mac*, 221 S.W.3d at 575–76.

As mentioned, the touchstone of the due process analysis is "purposeful availment." Minimum contacts would be sufficient to establish personal jurisdiction in this case only if

appellees purposefully availed themselves of the privilege and benefit of conducting activities within Texas. Only their contacts are relevant; their contacts must have been purposeful, rather than random, fortuitous, or attenuated; and their contacts must demonstrate that they sought some benefit, advantage, or profit in availing themselves of the jurisdiction of Texas. *See id.* at 575; *Michiana*, 168 S.W.3d at 784–85.

In Issue One, appellant argues that, by filing motions for sanctions against her, the appellees made general appearances prior to filing their special appearances and, thus, subjected themselves to personal jurisdiction in this matter by consent. Under Rule 120a, a special appearance, properly entered, enables a nonresident defendant to challenge personal jurisdiction in a Texas court. TEX. R. CIV. P. 120a. Strict compliance with Rule 120a is required, and a nonresident defendant will be subject to personal jurisdiction in Texas courts if the defendant enters a general appearance. *Morris v. Morris*, 894 S.W.2d 859, 862 (Tex. App.—Fort Worth 1995, no writ); *see also Burger King Corp.*, 471 U.S. at 472 n.14 ("[T]he personal jurisdiction requirement is a waivable right."). However, we do not reach analysis of this issue because our review of the record contradicts appellant's assertion. Appellant has misstated the record. The appellees were not among the parties who filed the motions for affirmative relief cited by appellant; the Business Defendants were the only ones who filed the motion.

In Issue Two, appellant asserts that the default judgment against appellees admitted all facts pleaded within her third amended petition, including allegations of alter ego jurisdiction. Special appearances may properly be granted even after a default judgment is granted. *See Xenos Yuen v. Fisher*, 227 S.W.3d 193, 196 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *Lang v. Capital Res. Invs. I & II, LLC*, 102 S.W.3d 861 (Tex. App.—Dallas 2003, no pet.). Appellant attempted to serve appellees by nonresident citation under TEX. R. CIV. P. 108. Allegations in petitions served under this rule must be sufficient to meet due process requirements. *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 496 (Tex. 1988); *Herbert v. Greater Gulf Coast Enters., Inc.*, 915 S.W.2d 866, 870 (Tex. App.—Houston [1st Dist.] 1995, no writ). Service of process under Rule 108 does not, in and of itself, confer in personam jurisdiction. *Paramount Pipe*, 749 S.W.2d at 495; *Herbert*, 915 S.W.2d at 870.

Appellant did not meet her initial burden of pleading sufficient allegations to bring appellees within the provisions of the Texas long-arm statute for either specific or general personal jurisdiction. Appellant's third amended petition was devoid of any jurisdictional facts establishing minimum contacts between appellees and the State of Texas, either continuous and

systematic or that specifically gave rise to the litigation. We agree with the trial court's conclusion that the petition was vague and conclusory regarding jurisdiction. Appellees specifically complained about this in their motions, their briefs, and at length at the hearing. At the hearing, appellant's counsel seemed to acknowledge that the pleadings did not contain jurisdictional facts: he told the trial court that, as far as the pleadings went, he could not plead specific facts without the extensive written discovery that he was requesting.

In her third issue, appellant argues that appellees cannot assert a "no alter ego defense" because "there were no corporate defendants in this case," only LLCs, and because there must be at least one corporate defendant before a "no alter ego defense" can be established. Appellant does not cite any support for this assertion. Actually, Texas courts have applied to LLCs the same state-law principles for piercing the corporate veil that they have applied to corporations. *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590–91 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Alter ego theory is just one of the ways of piercing the corporate veil. *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). Alter ego jurisdiction is a form of "jurisdictional veil-piercing." *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 172–75 (Tex. 2007).

We interpret appellant's third issue to be an argument that alter ego jurisdiction was established by the facts admitted by the default judgment. However, appellant's petition did not establish any basis for extending personal jurisdiction under an alter ego theory. After reviewing the petition and the arguments that appellant's counsel made at the hearing on the special appearance, we interpret appellant's argument to be that, through a chain of other entities, we can establish personal jurisdiction over Canyon Sudar Partners, LLC, a Delaware limited liability company. And that, by reaching Canyon Sudar, we can extend personal jurisdiction to the appellees as individuals because Grunstein and Forman are managing members of Canyon Sudar.

As we have said, Texas courts have applied to LLCs the same state-law principles for piercing the corporate veil that they have applied to corporations. *McCarthy*, 251 S.W.3d at 590–91. Therefore, we will apply the following principles of law to the Business Defendants in this case.

Because two corporations are presumptively distinct and separate, the Texas Supreme Court has held that, to disregard that "corporate fiction" and thus "fuse" the entities for purposes of jurisdiction, plaintiffs must demonstrate a degree of control by the parent company that

8

exceeds the control "normally associated with common ownership and directorship," by means of evidence showing that "the two entities cease[d] to be separate." *BMC Software*, 83 S.W.3d at 798–99; *see also PHC-Minden*, 235 S.W.3d at 175 (quoting *BMC Software* "factors" controlling assertions of imputed contacts, 83 S.W.3d at 799). Appellant did not meet that burden. Appellant did not plead or present any basis for imputing the actions of one of the Business Defendants to another. Appellant also did not plead or present any basis for piercing the veil between appellees as individuals and the entity of which they were allegedly managing members, Canyon Sudar Partners, LLC. Jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.); *Wolf v. Summers-Wood, L.P.*, 214 S.W.3d 783, 790 (Tex. App.—Dallas 2007, no pet.). The party that seeks to pierce the corporate veil has the burden to show that the corporate entity should be disregarded. *BMC Software*, 83 S.W.3d at 798.

Appellant pleaded only that appellees were managing members of Canyon Sudar Partners, LLC and that Canyon Sudar is the sole member of Svcare Holdings, LLC, which is the sole member of SavaSeniorCare, LLC, which owns 100% of SSC Equity Holdings, LLC, which is the sole member of SSC Submaster Holdings, LLC, which owns 100% of the equity of SSC Greenview Operating Company GP, LLC, which operates the Waco nursing home where appellant worked and was allegedly injured on the job. The allegation of ownership, standing alone, is insufficient to establish an alter ego relationship. *PHC-Minden*, 235 S.W.3d at 175 (A "subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders.") (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990) (weighing the *total* dealings of the corporation and the individual) (citing *Castleberry*, 721 S.W.2d at 272); *see also Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 733 (Tex. App.—Corpus Christi 2006, pet. denied) ("[I]f a corporation's only contact with the forum is its ownership of a distinct and separate corporation doing business independently in the forum, no minimum contacts exist unless the forum contacts of the subsidiary can be attributed to the parent.").

Appellant presented no jurisdictional facts to the district court that establish minimum contacts with Texas. *BMC Software*, 83 S.W.3d at 795. However, even when there are no

jurisdictional allegations in a plaintiff's petition, a defendant must negate all bases of jurisdiction. *Magic House AB v. Shelton Beverage L.P.*, 99 S.W.3d 903, 909 (Tex. App.—Dallas 2003, no pet.) (citing *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex. App.—Dallas 1993, writ dism'd by agr.)). In such a case, proof that a defendant is a nonresident is sufficient to meet this burden. *Id.* Here, appellees filed affidavits in which they assert that they are nonresidents and in that they also negate all the traditional contacts that could together form the basis for minimum contacts with the state necessary to establish personal jurisdiction. Appellees swore that they do not do business in Texas as individuals, own no property in Texas, have no offices in Texas, have no employees in Texas, have never been to Greenview Manor Nursing Home, and do not (and did not in April 2005) have an ownership stake in either the Business Defendants or Greenview Manor.

Appellees also established that Canyon Sudar is a Delaware limited liability company that has no offices in Texas and that Canyon Sudar did not own or operate Greenview Manor in April 2005 when appellant claims she was injured. Appellees also negate the possibility of alter ego by swearing that the Business Defendants have operated as separate entities from Grunstein and Forman; that Grunstein and Forman do not dominate or control the Business Defendants' day-to-day operations or internal affairs (and did not do so in April 2005); that Grunstein and Forman do not direct how the Business Defendants or Greenview Manor take care of nursing home residents or how they make nurse staffing, hiring, or equipment decisions; and that Grunstein and Forman are not the jurisdictional alter ego of either Greenview Manor or the Business Defendants. Appellant did not contest any of the facts in the affidavits. Appellees effectively negated all bases of jurisdiction.

In Issue Four, appellant argues that appellees had voluntary contacts with the Texas Secretary of State and the Texas Department of Aging and Disability Services and that these contacts support a finding of both specific and general personal jurisdiction of the Texas courts. These contacts were not pleaded by appellant in her third amended petition, but were argued before the trial court during the hearing on the special appearances.

Appellant alleged that appellees filed an application for registration of SSC Waco Greenview Operating Company LP with the Texas Secretary of State. However, in her reply brief, appellant cedes this issue and asks us to disregard it. Appellant acknowledges that the signature on the application for registration is that of one "Harry Grunstein," not appellee Leonard Grunstein, and that there is nothing in the record before the court establishing a

10

connection between Harry Grunstein and either of the appellees in this action. Therefore, we do not address this alleged contact.

Appellant alleged that appellees filed a document entitled "Controlling Party Structure" with the Texas Department of Aging and Disability Services showing that they were the sole owners of SSC Waco Greenview Operating Company LP. However, we see nothing in the record to support this allegation. As appellant's counsel represented to the trial court at the hearing, the document is a matter of public record and was printed from the Texas Department of Aging & Disability Services website. However, it does not indicate that it was filed by appellees, as appellant alleges. There is nothing in the record to support appellant's contention that it was personally filed by appellees. Additionally, the document does not indicate that appellees, as individuals, were the sole owners of SSC Waco Greenview Operating Company LP. To the contrary, the document contains the name of a nonparty LLC as the 100% owner of SSC Waco Greenview Operating Company LP. In their affidavits, appellees aver that they have no ownership interest in SSC Waco Greenview Operating Company LP. Their assertion is not negated by anything in the "Controlling Party Structure" document, nor is it otherwise controverted.

The trial court properly granted appellees' special appearances, and appellant's arguments in Issues One, Two, Three, and Four are overruled.

### Denial of Adequate Discovery Time

In Issue Six, appellant argues that the trial court denied her adequate discovery time. Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding); *In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). An appellate court reviews the issue of "adequate time for discovery" under an abuse of discretion standard. *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *VingCard A.S. v. Merrimac Hospitality Sys., Inc.*, 59 S.W.3d 847, 855 (Tex. App.—Fort Worth 2001, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). In reviewing the trial court's decision, we must determine whether the trial court's action was arbitrary or unreasonable. *Id.*

The trial court granted appellant's initial motion for continuance of the hearing on appellees' special appearances and allowed appellant time to conduct discovery limited to

jurisdictional facts. Rather than making discovery demands upon appellees, appellant chose to depose the administrator of Greenview Manor, Rod Bicford. Appellant served Bicford with a subpoena duces tecum to furnish eight categories of documents. Bicford produced the documents and was deposed. However, appellant chose to recess the deposition.

After appellant unilaterally recessed Bicford's deposition, appellees reset their special appearance hearing. Appellant did not file a motion to continue that hearing. She also did not explain, by affidavit or otherwise, what specific jurisdictional discovery she needed, or why she deposed Bicford rather than appellees. Appellant did not provide the court with an affidavit stating the reasons why she could not present the facts that were essential to justify her opposition to the special appearances. *See IRN Realty Corp. v. Hernandez*, 300 S.W.3d 900, 903 (Tex. App.—Eastland 2009, no pet.) (Rule 120a specifically provides that affidavits of the party opposing the special appearance are the means to obtain a continuance of the special appearance so that a deposition may be conducted). At the hearing, appellant did not ask to depose appellees regarding jurisdictional facts. Instead, appellant asked for leave to conduct written discovery to investigate the ownership structure of over sixty nonparty limited partnership entities. Counsel did not show how such discovery related to the establishment of minimum contacts between appellees and the State of Texas. As her reason for failing to plead jurisdictional facts in her petition, appellant's counsel told the trial court, "I can't plead specific facts until I have the facts. I can only get the facts through discovery." However, appellant was required to provide the court with a colorable basis or reason to believe that discovery would reveal sufficient minimum contacts. *Barron v. Vanier*, 190 S.W.3d 841, 849–50 (Tex. App.—Fort Worth 2006, no pet.) (Courts should allow additional time for discovery when "the movant makes a good-faith showing, provides a colorable basis for, or makes a prima facie case of personal jurisdiction, or provides a reason to believe that discovery would reveal sufficient minimum contacts."); s*ee also Solgas Energy Ltd. v. Global Steel Holdings Ltd.*, No. 04-06-00731-CV, 2007 WL 1892206 at *6–7 (Tex. App.—San Antonio July 3, 2007, no pet.) (mem. op.) (trial court did not abuse its discretion in determining that plaintiff's alter ego allegation did not entitle it to pursue additional discovery in an effort to establish an alter ego connection). Appellant did not meet that burden. The trial court did not abuse its discretion when it denied further jurisdictional discovery by appellant. Appellant's sixth issue on appeal is overruled.

Appellees alleged in their brief that appellant's counsel had failed to serve them with adequate notice in several respects. Because of this, they contend that they are not subject to the

default judgment and that it was effectively an ex parte judgment. Because there were effectively no minimum contacts established by appellant, we did not need to reach the issue of defective service of process, the applicability of the default judgment to appellees, or the pending motion for sanctions against appellant in the trial court. We did not consider this information in reaching our decision. The trial court not only granted appellees' special appearances, but also granted the Business Defendants' motion for summary judgment on appellant's underlying negligence claims, identical to the claims asserted against appellees. The Business Defendants are pursuing motions for sanctions against appellant in a separate cause. For these reasons, we did not find it necessary or appropriate to address those issues.

The judgment of the trial court is affirmed.

PER CURIAM

May 10, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

13